Simon, J.
It appears from the records, that when the present suit was originally instituted, the plaintiffs sued out an attachment against the defendants’ property, which was levied by the Sheriff on divers rights, interest, and moneys, which said defendants had belonging to them in different banks of the city of New Orleans, and in the hands of Bogart & Hawthorn, as also on the steamship New York owned by said .defendants, one-fourth belonging *564 to Wright, and three-fourths belonging to his co-defendants, Haggerty and Morgan. In the mean time another suit was also instituted by one McCaughan, by attachment, against the same defendants, which attachment was also levied on the same property, and in order to obtain the release of both attachments, the defendants executed two bonds in favor of the Sheriff, with Hawthorn and Woods as sureties, conditioned that, whereas by virtue of writs of attachment issued at the suit of H. E. Irish against the said defendants, and at the suit of J. J. McCaughan against the same defendants, certain property therein described had been seized and attached, &c,, which attachments were released and set aside, “if said defendants shall satisfy such judgments as may be rendered against them in the suits pending as above mentioned, then the obligations to be void,” &c. One of said bonds was executed for the sum of $20,000, by Haggerty and Morgan as principals, and the other bond was executed by Wright as principals for the sum of $10,000, with the same sureties, and they were both executed on the same day.
It appears further, that on the day the Sheriff made the return of the attachments, he made a transfer or assignment of his rights, title and interest in and to the two bonds, to the plaintiffs in the two suits; and that the same were approved by the plaintiff !s counsel, who, accordingly, authorized the seizures to be released on the delivery of the said bonds.
The suits went on, and judgment having been rendered in favor of Irish against the defendant Wright for the sum of $13,333 33, (which judgment was subsequently affirmed in June, 1844, by this court on a devolutive appeal taken by Wright,) and in favor of his co-defendants, Haggerty and Morgan, a writ of execution was issued for the benefit of Irish against said Wright, which was returned by the Sheriff; “ No property found f whereupon the plaintiff obtained a rule on the sureties, Hawthorn and Woods, to show cause why judgment should not be rendered against them, in solido, for the sum of $10,000, in consequence of their being obligated jointly and severally for that amount, as the sureties of Wright, on the bond by him executed for the release of the property attached, and of the judgment rendered against said Wright, which was not and could not be sat *565 isfied by the seizure of his property under the execution which had issued for that purpose ; by reason whereof the sureties have become liable to pay to the plaintiff the amount of the judgment, or the penalty stipulated in the bond.
Hawthorn and Woods filed their answer to the rule, in which, after excepting to said rule, on the ground that the plaintiff is n<}t competent to maintain it alone, he being a joint obligee with John McCaughan, the plaintiff in the other suit, they deny the allegations of the rule, admitting only as to said obligation what they have admitted of record, and also denying that they are in any wise liable to the plaintiff.
Judgment was rendered below in favor of the plaintiff for the sum of $5000, being one-half of the amount of the bond ; and from this judgment Hawthorn and Woods have appealed.
The appellee has prayed in his answer, that the judgment appealed from may be so amended as to allow him the whole amount of the bond.
On the exception of the appellants, which was overruled below, we think the Judge, a quo, did not err. It has already been stated, that two suits were instituted in the names of two different plaintiffs against the original defendants, in which writs of attach nent were sued out. T ne&e attachments were levied on said defendant’s interest in the steamship JNew York, belonging for one-fourth to the defendant Wright, and under the bond sued on, furnished by the latter with the appellants as his sureties, the property attached was released. The Sheriff took only one bond for the two cases, conditioned that the defendant should satisfy such judgments as might be rendered, &c.; and the bond was assigned by the Sheriff to the plaintiffs in the two actions.
It is perhaps true, that in every suit on a contract or obligation in which more than one obligee is named, it is necessary that all the obligees should join to enforce its performance; but a contract may contain distinct obligations to perform different things in favor of different persons; and in such cases, the obligations being several and unconnected, each obligee has his separate and distinct remedy on the obligation which regards him individually. Civ. Code, arts. 2074, 2076. But it is different *566 when the obligation is contracted for the performance of something for the common benefit of all the obligees. In this case, the suit of Irish had no connection whatever with that of Me-Caughan ; the interest of each is distinct from that of the other, as they sought to obtain distinct and separate judgments against the principal debtor, which judgments, on being respectively rendered in favor of the plaintiffs, the defendants promised to satisfy respectively under the penalty stipulated in the bond. The appellants here, are called upon to satisfy the judgment in favor of Irish; or to pay him the amount of said bond, and we are not prepared to say, that MeCaughan has any sort of interest in the object of his demand. The real obligee in this bond was originally the Sheriff, in whose favor it was made; and we concur with the Judge, a quo, in the opinion that said bond having been by him assigned to the parties, who are respectively to benefit from it, having a distinct and separate interest in the object for which it was taken, it is clearly analogous and may be fairly compared to a bond given by a sheriff, or other officer, for the faithful discharge of his duties, upon which the law allows to the official creditors of such officer, a distinct and separate right of action. Why should MeCaughan join the plaintiff? Nothing shows that any judgment was ever rendered in his favor; and suppose he had never obtained any such judgment as would entitle him to the benefit of the bond, ought the plaintiff to be for ever precluded from exercising his rights upon it, because, forsooth, MeCaughan would never be able to join him? Surely not. The plaintiff’s rights are distinct and separate, and we are of opinion that they may be enforced against the obligors by a distinct and separate suit.
On the merits, it has been contended by the appellants’ counsel, that his clients, as sureties on the attachment bond, are not liable, because the attachment was issued in a suit, the subject matter of which was not a contract, but damages for a tort. Hence, it has been insisted that such a cause of action cannot support an attachment, and that, therefore, the bond given for the property attached is a nullity.
Before investigating the legal question submitted to our solution, and which is one of some importance under our system of *567 legislation, it is proper and even necessary, that we should advert to the-facts relative to the origin of the action, as they appear from the allegations set up in the plaintiff’s petition for an attachment, and inquire into the cause of action upon which his claim for damages was based ; for, if it be true that the amount sued for, though under the denomination of damages for a tort, is claimed by virtue of an obligation which originated ear contractu, and which the defendant became subsequently bound to discharge ex delicto, and if such amount is so certain and so-specific, as to enable the plaintiff to swear expressly to its existence, and to claim it as a debt, or in the nature of a debt, this would undoubtedly be sufficient to authorize the issuing of a writ of attachment.
The petition in this case alleges, that the defendants are justly indebted to the ‘plaintiff in the sum of $>13,333 33, which was originally due him by one Alsbury and others, on two promissory notes, each for the sum of $6666 66|~. That having instituted a suit in the State of Mississippi against his debtors, in which a judgment was expected to be rendered in February, 1842, said Alsbury, to avoid the payment of said debt, and to defeat the process of the court, absconded from said State, and clandestinely ran off his slaves from said State. The petition proceeds to state the facts relative to the negotiation which took place between Als-bury and the defendant Wright, to transport the slaves out of the State of Louisiana on board of the steamer INew York ; adverts to the circumstances which attended the transportation and its object; alleges that the plaintiff vainly resorted to the issuing of a writ of attachment against said slaves, by process issued against Alsbury from the court of the First District ; states further circumstances that followed the suing out of the writ of attachment, and avers, that he has sustained damages to the sum of $13,333 33, for the payment of which, the defendants, Wright, and Haggerty and Morgan, have become liable and indebted, in solido, to the petitioner, with the interest due thereon by the original debtor; wherefore, he prays that judgment be rendered against them accordingly, <fcc. The affidavit ol the plaintiff, upon which the attachment was granted, states, that the defendants therein named a,re justly and truly indebted to him, in solido, in the just and *568 full sum of $13,333 33, which he swears is really due him, &c. This was the amount of the judgment rendered by the court, a qua, in favor of the plaintiff against the defendant, Wright, which was affirmed in this court, (see case of Irish v. Wright et al. decided in' June, 1844,) and which is nothing less than condemning Wright to pay to the plaintiff the amount, of the debt contracted by Alsbury to the plaintiff, and which Wright had, from his unlawful and fraudulent acts in collusion with the debt- or, become liable to discharge by way of damages.
Now, art. 242 of the Code of Practice provides, that “the property of a debtor may be attached in the hands of third persons by his creditors, in order to secure the payment of a debt, whatever may be its nature, whether the amount be liquidated or not, provided the term of payment have arrived, and the creditor, who prays for the attachment, state expressly and positively the amount which he claimsand art. 243 requires the creditor to declare under oath, the amount of the sum due to him. Under these provisions, very broad in their language, can it be seriously contended that the present case should form an exception to the general rule, and that the law-maker has not intended that a creditor should have the benefit of the writ of attachment, when the debt by him claimed is sought to be recovered in the form and nature of damages? Are not the damages claimed in this suit really a debt due by the defendants, as a consequence of their unlawful acts 1 and can it be said, that the claim set up against them, though unliquidated, is not sufficiently certain to enable the plaintiff to swear to its precise amount ? The allegations of his petition, which were subsequently established, show that he had a right to consider the defendant Wright as his debt- or for the whole amount of the debt due by Alsbury, and that the said debt was the foundation of his action ; and if so, we cannot entertain any doubt, that his case came under the provision of the Code of Practice which authorizes a creditor to resort to the writ of attachment, for the purpose of securing the- payment of a debt, whatever may be its nature. A contrary opinion would limit this provision of our law to its most restricted sense or interpretation : when, on the contrary, the will of the legislator appears clearly to be, that it should apply to all sorts or nature of *569 debts, provided the creditor cau state expressly and positively the amount which he claims, and can also swear to the existence of the sum due him. Here, again, the amount claimed as damages was a debt which the plaintiff was seeking to secure and recover; it was expressly and positively stated by him in his petition, and sworn to in his affidavit; and we must conclude, that the attachment which gave rise to the bond sued on, was properly and legally obtained.
This view of the subject renders it necessary to examine the question presented by a comparison of art. 213 of the Code of Practice, in which damages in general are provided for when a writ of arrest is sought to be obtained, with art. 242 above quoted. Cases may arise in which the damages claimed could not be considered as a debt, or in the nature of a debt; and such cases perhaps would not come under the application of the article last referred to. Indeed, this appears to be the jurisprudence of this court, so far as it goes ; and we are not ready to make it undergo any change or modification, so far as it applies to the kind of causes in which this question was settled. But it is worthy of notice, that the cases referred to by the appellants’ counsel, seem to exclude from the attachment law those claims for damages, in which the amount sued for cannot be ascertained, and where such amount is not specific. So, in-1 Mart. 67, the court said, that “ the obvious meaning and import of the expressions of tho law (then under consideration) confine the case, in which bail is demandable, to suits for direct and specific injuries, the amount of which may be ascertained,” &c. Also, in 2 Mart. N. S. 325, it was held, that “ to require that the damages should be ascertained and made specific by the act of the party sued, would be to render the words of the statute (that of 1817) useless, for the moment this liquidation took place, they would cease to be damages and become .a debt." And in 6 Mart. N. S. 564, it was decided, that the law of 1817 did not extend the process of attachment to all cases of damages absolutely, but restricts it to damages ascertained or specific. This jurisprudence is in accordance with our interpretation, in this case, of art. 242, which, we think, applies also to cases in which debts ascertained and specific, are sought to be recovered by way of damages; or in which the *570 damages sued for, the amount whereof is expressly and positively stated and sworn to, are claimed in the nature of a debt.
Having thus disposed of the principal point in controversy, our next inquiry necessarily is, what portion of the amount of the bond is the plaintiff entitled to? The Judge, a quo, was of opinion that,'as the bond had been made for the benefit of two plaintiffs, each of whose claims exceeds $10,000, one of them could not recover the whole amount of the bond, and leave the other without anything in case he should recover judgment against the defendant in his suit; and that, as the bond did not state their respective shares in the obligation, he should apply the rule prescribed by art. 2081 ofthe Civil Code, relative to the liability of joint obligors; and he accordingly divided the amount of said bond in two portions, and allowed one-half thereof to the plaintiff'. We are of opinion that he decided correctly; but as the judgment rendered in this case exceeds the whole amount of the bond ; and as, if the plaintiff had been the only creditor at whose suit the attachment had been sued out, he would have been entitled to the exclusive benefit of said bond, and to the whole amount thereof, we think justice requires, in case it should happen that McCaughan’s action should be defeated, and the bond sued on should become unavailable as to him, that the rights of the plaintiff to the recovery of the balance of said bond should be reserved, so as to permit him hereafter to institute proceedings for that purpose.
It is, therefore, ordered and decreed, that the judgment of the Parish Court be affirmed with costs, reserving to the plaintiff his right to sue for and recover of the defendants and appellants, the urther sum of $5000, due on the bond sued on, in case said bond should hereafter prove to be unavailable as to J. J. McCaughan or his assignees, for whose benefit it was partly executed by said defendants.
T. Slidell, for the appellants,
Hawthorn and Woods, for a rehearing. The appellants, Hawthorn and Woods, the sureties on the attachment bond, are not liable, because the attachment issued in a suit, the subject matter of which was not a contract, but damages for a tort. Such a cause of action cannot support an attachment ; and,' the bond given for the property attached is a nullity.
There is a distinction between the remedy of arrest, and the remedy of attachment. The Code of Pract. art. 213, says :
“ Such arrest may be ordered in all demands brought for a debt, whether liquidated or not, when the term of payment has expired, and even for damages for any injury sustained by the plaintiff either in his person or property.” Art. 242 of the same Code declares that, “ The property of a debtor may be attached in the hands of third persons by his creditor, in order to secure the payment of a debt, whatever may be its nature, whether the amount be liquidated or not, provided the term of payment has arrived, and the creditor, his agent, or attorney in fact, who prays for the attachment, state expressly and positively the amount which he claims.”
In one case the remedy is given for damages as well as debt; in the other case it is given for debt only.
This difference cannot be said to be accidental. It is found in the legislation of this country forty years ago, under the territorial government.
In Martin’s Digest, p. 474, we find the act of 1805, prescribing in what cases a writ of arrest may issue. “ Whenever a petition is filed for the recovery of any debt, or damages on note, bond, contract or open account, or for damages for injury or detention of the property of the petitioner,” &c.
In the same volume, p. 514, and by the statute of the same year, 1805, the remedy of attachment is given only for debt. “ Whenever a petition shall be presented for the recovery of a debt.” p. 512.
Then as now, an arrest would lie not only for debt, but for damages for a tort; but an attachment would lie for a debt only.
The law of 1817 extended, however, the remedy of attachment to certain cases of damages. At page 26, (Statutes of 1817,) it was prescribed in all actions where the sum due is one hundred dollars or upwards, whether upon bond, bill of exchange, promissory note, or liquidated account, and in every case where the amount of the debt, damages, or demand is ascertained and specific, the plaintiff may have an attachment, <fcc.